IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| THE BASS TANK, LLC an Oklahoma Limited Liability Company,<br><br>    Plaintiff,<br><br>v.<br><br>MET INC. D/B/A BASS BOAT ELECTRONICS, a Tennessee Corporation,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)   Case No. CIV-22-1086-D<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## **ORDER**

Before the Court is Defendant's Replacement Motion for Partial Summary Judgment & Memorandum in Support of Its Motion [Doc. No. 32]. Plaintiff filed a Response [Doc. No. 35], Defendant filed a Reply [Doc. No. 36], and, upon leave of Court, Plaintiff filed a Sur-Reply [Doc. No. 41]. The matter is fully briefed and at issue.

### **BACKGROUND AND UNDISPUTED MATERIAL FACTS[1]**

This case stems from a dispute between the parties regarding the ownership and use of the domain basstank.com. Defendant is a marine supply store with a physical location in Louisville, Tennessee and online store hosted at the domain bassboatelectronics.com. Plaintiff is also a retailer in the marine electronic business and has federally registered its trademark, THE BASS TANK.

---

[1] This statement includes material facts that are supported by the record and not opposed in the manner required by Fed. R. Civ. P. 56(c)(1) and LCvR56.1(d). All facts properly presented by a party and not specifically controverted by an opponent are deemed admitted, pursuant to Fed. R. Civ. P. 56(e)(2) and LCvR56.1(e). Further, any fact stated by a party that is not supported by the party's citation to the record is disregarded.

Believing that owning basstank.com would help generate business, in January 2022 Defendant agreed to purchase the domain from a third-party seller. Defendant used basstank.com to host a dummy website that included a re-creation of its bassboatelectronics.com homepage with links redirecting users to Defendant's bassboatelectronics.com domain, or to Defendant's various social-media sites. Plaintiff's primary domain name for its business is thebasstank.com, with the difference between it and the domain Defendant acquired being the inclusion of "the" at the beginning of Plaintiff's domain (basstank.com vs. thebasstank.com).

On December 22, 2022, Plaintiff's counsel sent Defendant a cease-and-desist letter notifying Defendant of the Complaint filed in this case the day before. The cease-and-desist letter was the first time Plaintiff had contacted Defendant regarding basstank.com. On January 6, 2023, after having the opportunity to engage and consult legal counsel, Defendant parked basstank.com.[2]

In this case, Plaintiff is seeking damages stemming from Defendant's alleged trademark infringement. As for its claim under the Lanham Act, Plaintiff admits that it did not provide Defendant with notice of its registered trademark until December 22, 2022, when it sent the cease-and-desist letter. Therefore, for purposes of damages under the Lanham Act, Plaintiff concedes that it is not entitled to any damages incurred before that date, at which point Defendant had notice of the registered trademark.

---

[2] Neither party explains what it means to "park" a domain. However, the Court understands a "parked" domain to mean a domain name that is registered but not connected to an online service, such as an e-mail or a website.

In addition to its Lanham Act claim, Plaintiff also seeks damages under various state laws, including the Oklahoma Deceptive Trade Practices Act.

## STANDARD OF DECISION

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if the facts and evidence are such that a reasonable jury could return a verdict for the nonmoving party. *Id.* All facts and reasonable inferences must be viewed in the light most favorable to the non-movant. *Id.* at 255.

A movant bears the initial burden of demonstrating the absence of a dispute of material fact warranting summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the movant carries this burden, the nonmovant must then go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998); *see also* Fed. R. Civ. P. 56(c)(1)(A). The inquiry is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

## DISCUSSION

Generally speaking, the parties disagree over the scope of potential damages available to Plaintiff in this case. One source of potential damages stems from a federal statute, 15 U.S.C. § 1117(a), while the other stems from an Oklahoma statute, Okla. Stat. tit. 78, § 54(A). Although the parties agree on the scope of potential damages available under § 1117(a), it is the second source of potential damages, under § 54(A), that forms the primary basis of the parties' dispute. The Court addresses each potential source of damages in turn.

**I.      15 U.S.C. § 1117(a)**

15 U.S.C. § 1117(a)—the provision of the Lanham Act governing recovery for violations of trademark rights—provides in relevant part:

> When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 1125(a) or (d) of this title, or a willful violation under section 1125(c) of this title, shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action.

As stated above, § 1117(a) is subject to 15 U.S.C. § 1111, which provides:

> Notwithstanding the provisions of section 1072 of this title, a registrant of a mark registered in the Patent and Trademark Office, may give notice that his mark is registered by displaying with the mark the words "Registered in U.S. Patent and Trademark Office" or "Reg. U.S. Pat. & Tm. Off." or the letter R enclosed within a circle, thus ®; and in any suit for infringement under this chapter by such a registrant failing to give such notice of registration, no profits and no damages shall be recovered under the provisions of this chapter unless the defendant had actual notice of the registration.

Boiled down, § 1117(a) provides that, should Plaintiff establish infringement of its trademark, it is entitled to recover Defendant's profits, its own damages, and costs of this action. But, pursuant to § 1111, Plaintiff cannot recover under § 1117(a) unless and until Defendant had actual notice of Plaintiff's trademark registration.

Here, Plaintiff did not provide Defendant with actual notice of the trademark registration until December 22, 2022, when Plaintiff's counsel sent Defendant a cease-and-desist letter informing it of the alleged infringement and pending lawsuit. Plaintiff concedes that Defendant did not have actual notice of the trademark registration until December 22, 2022 and, therefore, it cannot recover damages under § 1117(a) that were incurred before that date. Pl.'s Resp. at 4.

However, Plaintiff argues that, because Defendant did not park the domain until January 6, 2023, it can recover damages incurred during that short period of time—*i.e.*, from December 22, 2022 to January 6, 2023. In its Reply, Defendant does not appear to contest this point. Based on the parties' respective positions, the undisputed material facts presented, and the statutory text of 15 U.S.C. §§ 1111 and 1117(a), the Court finds that the only damages Plaintiff may potentially recover at trial under § 1117(a) are those damages incurred from December 22, 2022 to January 6, 2023.

**II.    Okla. Stat. tit. 78, § 54(A)**

Okla. Stat. tit. 78, § 54(A)—the section of the Oklahoma Deceptive Trade Practices Act governing remedies—provides in full:

> Any person damaged or likely to be damaged by a deceptive trade practice of another may maintain an action in any court of equitable jurisdiction to prevent, restrain or enjoin such deceptive trade practice. Proof of actual

5

monetary damages, loss of profits or intent shall not be required. If in such action damages are alleged and proved, the plaintiff, in addition to injunctive relief, shall be entitled to recover from the defendant the actual damages sustained by the person.

Focusing on § 54(A)'s use of the term "loss of profits," Plaintiff argues that it may recover Defendant's profits, presumably even if it cannot prove actual damages. Pl.'s Resp. at 5-6. Although Plaintiff acknowledges there is no Oklahoma authority supporting its position, it relies on persuasive authority in which courts have allowed a defendant's profits to serve as a measure of the plaintiff's actual damages. *See* Pl.'s Sur-Reply at 2-3 (citing cases from the Fourth Circuit and Eastern District of North Carolina).

Defendant, on the other hand, argues that § 54(A)'s second sentence—which includes the reference to "loss of profits"—merely clarifies "that such proof is not required in order to obtain an injunction under the statute." Def.'s Reply at 4. Further, Defendant contends that § 54(A)'s last sentence "then provides that 'actual damages sustained by the person' [are] available in addition to injunctive relief if such damages are alleged and proved." *Id.* at 4-5. Therefore, Defendant concludes, "§ 54(A) provides only for the potential recovery of Plaintiff's actual damages and not Defendant's profits." *Id.* at 5.

Upon consideration, the Court finds that Defendant's profits are not recoverable under § 54(A). More specifically, the Court agrees with Defendant that § 54(A)'s second sentence modifies its first—*i.e.*, proof of actual monetary damages, loss of profits, or intent shall not be required for a party to obtain injunctive relief under § 54(A). A more natural reading of § 54(A) as a whole—and one that aligns with the statute's plain language—is as follows:

> Under § 54(A), a party damaged by a deceptive trade practice may obtain injunctive relief, and it need not prove actual monetary damages, loss of profits, or intent, to obtain said injunctive relief. However, if a party does allege and prove damages, it may recover (in addition to injunctive relief) from the defendant the actual damages sustained by the plaintiff.

This natural reading of § 54(A), therefore, places the burden on Plaintiff to allege and prove actual damages that it sustained as a result of Defendant's alleged infringement. Indeed, the statute's use of the phrase "sustained by the plaintiff" reinforces that Plaintiff must show that it was in some way actually harmed by Defendant's alleged infringement. The fact that Defendant generated profits during the time period of the alleged infringement does not, on its own, establish that Plaintiff "sustained" actual damages itself.

The Court's conclusion appears bolstered by a comparison between § 54(A) and § 1117(a). Section 1117(a) explicitly provides that, once infringement has been established, a plaintiff may recover "(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." However, "plaintiffs must show either actual damages or willful action on the part of the defendant as a prerequisite to recover disgorgement of profits." *Klein-Becker USA, LLC v. Englert*, 711 F.3d 1153, 1162 (10th Cir. 2013); *see also Champion Spark Plug Co. v. Sanders*, 331 U.S. 125, 131 (1947) (holding that profits are not automatically awarded as damages for trademark infringements); *Western Diversified Servs., Inc. v. Hyundai Motor America, Inc.*, 427 F.3d 1269, 1272 (10th Cir. 2005) (holding that either actual damages or willful actions will merit the award of disgorgement of profits).

Therefore, even under § 1117(a)—which explicitly provides for a defendant's profits as a form of recoverable damages—the plaintiff still must show either actual

7

damages or willful action before any potential recovery of the defendant's profits. Absent controlling caselaw to the contrary, the Court is not willing to read into § 54(A) a category of potential damages that the Oklahoma legislature could have easily included, much like Congress did when drafting § 1117(a).

Defendant also argues that, regardless of whether its profits are subject to recovery under § 54(A), Plaintiff has no evidence of actual damages. Def.'s Reply at 5-6. Upon review of the deposition testimony Defendant cites in support, along with the rather undeveloped summary-judgment record as a whole, the Court concludes that an issue of fact exists as to whether Plaintiff has suffered actual damages. *See* Pl.'s 30(b)(6) Depo. [Doc. No. 36-1] at 3 (generally describing various alleged actual damages, including "damages via reputation, via confusion by consumers, by cyber piracy, [and] unfair business practices").

## CONCLUSION

For these reasons, the only category of damages Plaintiff may recover under 15 U.S.C. § 1117(a) are those damages incurred from December 22, 2022 to January 6, 2023. Further, the Court concludes that Defendant's profits are not recoverable under Okla. Stat. tit. 78, § 54(A). However, based on the rather undeveloped summary-judgment record, the Court cannot conclude at this stage that Plaintiff has not suffered actual damages.

**IT IS THEREFORE ORDERED** that Defendant's Replacement Motion for Partial Summary Judgment & Memorandum in Support of Its Motion [Doc. No. 32] is **GRANTED IN PART** and **DENIED IN PART**, as fully set forth herein.

**IT IS SO ORDERED** this 24th day of January, 2025.

_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge