IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| THE BASS TANK LLC, an Oklahoma Limited Liability Company,<br><br>    Plaintiff,<br><br>v.<br><br>MET INC. D/B/A BASS BOAT ELECTRONICS, a Tennessee Corporation,<br><br>    Defendant. | Case No. CIV-22-1086-D |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

On October 15, 2025, the Court conducted a bench trial of the issues presented for decision in the Final Pretrial Report [Doc. No. 58]. Plaintiff The Bass Tank LLC, appeared through attorneys Phillip L. Free and L. Matthew Dobson, and corporate representative Robert Scott Palmer. Defendant MET Inc. d/b/a Bass Boat Electronics, a Tennessee Corporation appeared through attorneys Wade Orr and Colby D. Karcher, and corporate representative Jason Casell. Upon consideration of the evidence, the case record, and the parties' arguments, the Court finds and rules as follows.

**FINDINGS OF FACT**

1. This action, brought pursuant to 15 U.S.C. §§ 1125(a) and 1125(d)(1), concerns Defendant's use of Plaintiff's trademark in an internet domain name.

2. The claims are within the Court's jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338, & 1367. [Doc. No. 58, at p. 3, ¶ 2].

1

3. Plaintiff and Defendant are retailers in the marine electronics business and consider each other to be direct competitors. [Doc. No. 68, at p. 33:8-14, 67:3-5, 77:21-23].

4. Plaintiff operates under the trade name The Bass Tank, and Defendant operates under the trade name Bass Boat Electronics. *Id.* at p. 15:23-16:3, 65:5-6.

5. Since 2019, Plaintiff has operated an online store hosted at the domain "thebasstank.com" *Id.* at p. 26:22-28:17.

6. At all relevant times, Defendant operated its main online store hosted at the domain "bassboatelectronics.com." *Id.* at p. 65:22-24, 92:17-21.

7. Defendant became aware of Plaintiff as a business competitor around 2020. *Id.* at p. 67:17-21.

8. Registration No. 6,057,441 was issued on May 19, 2020, and identifies Plaintiff as the owner of a federal service mark registration for THE BASS TANK mark in connection with "Retail store services featuring marine and sports-related electronics" and "[o]n-line retail store services featuring marine and sports related electronics." [Doc. No. 58, at p. 3, ¶ 3(B)].

9. In January 2022, Defendant entered into an agreement to purchase the domain "basstank.com" ("Domain") from a third-party seller, which provided that Defendant would take ownership of the domain after making twelve monthly payments. *Id.* at p. 4, ¶ 3(C), [Doc. No. 68, at p. 100:10-14]. In or about February 2022, Defendant also sought to purchase a domain similar to the name of a different direct business

competitor, Russell Marine Products, but was unsuccessful. [Doc. No. 68, at p. 99:20-100:9].

10. The website hosted at the Domain mirrored the homepage of the website hosted at the domain bassboatelectronics.com. *Id.* at p. 37:16-38:21, 88:23-89:7, *see also* Plf.'s Ex. 9. When a user clicked anywhere on the Domain's homepage, the user was redirected to Defendant's website at bassboatelectronics.com. *Id.* at p. 87:14-88:15.

11. Other than the terms "bass" and "tank" being incorporated into the Domain name "basstank.com," Defendant never displayed or otherwise used the phrase "bass tank" on the websites hosted at bassboatelectronics.com, basstank.com, or elsewhere. [Doc. No. 58, at p. 4, ¶ 3(I)].

12. On or about December 14, 2022, Plaintiff discovered the Domain and Defendant's use of it. [Doc. No. 68, at p. 36:1-3].

13. On December 22, 2022, Plaintiff, for the first time, provided Defendant with statutory notice that Plaintiff's trademark was registered in compliance with 15 U.S.C. § 1111, when its counsel sent Defendant a cease-and-desist letter regarding Defendant's use of the Domain and pending lawsuit. [Doc. No. 58 at p. 4-5, ¶ 3(J),(K)], *see also* Def.'s Ex. 5.

14. On January 6, 2023, Defendant stopped using the Domain, and "parked" it. [Doc. No. 58 at p. 4, ¶ 3(E)]; [Doc. No. 68, at p. 104:13-18].

15. Plaintiff filed suit, seeking damages for Defendant's alleged trademark infringement pursuant to 15 U.S.C. § 1114 and common law, unfair competition pursuant to 15 U.S.C. § 1125(a) and common law, cyberpiracy pursuant to 15 U.S.C. § 1125(d), and

violation of the Oklahoma Deceptive Trade Practices Act pursuant to Okla. Stat. tit. 78, § 53, and seeking its attorneys' fees and costs. Additionally, it sought an injunction enjoining Defendant from using Plaintiff's trademark. [Doc. No. 1].

16. The Court narrowed the issues on summary judgment. [Doc. No. 45]. The Court ruled that the only damages Plaintiff may potentially recover at trial under 15 U.S.C. § 1117(a) are those damages incurred from December 22, 2022 to January 6, 2023 ("relevant time period"), because Plaintiff failed to provide the requisite statutory notice of its trademark to Defendant until December 22, 2022. Moreover, the Court ruled that Plaintiff may not recover Defendant's profits as a remedy under the Oklahoma Deceptive Trade Practices Act. [Doc. No. 45].

17. The parties further narrowed the triable issues, as Defendant stipulated that it is liable to Plaintiff for its claims of trademark infringement and/or unfair competition such that it is entitled to Defendant's "profits" pursuant to 15 U.S.C. § 1117(a) for sales for the relevant time period, less deductions for costs. [Doc. No. 58, at p. 5, ¶ 3(M)].

18. Defendant also stipulated that it is liable to Plaintiff for violation of 15 U.S.C. § 1125(d), but retained all arguments with respect to minimizing the amount of statutory damages to be awarded by the Court pursuant to 15 U.S.C. § 1117(d). *Id.* at p. 5, ¶ 3(L).

19. Despite Defendant's stipulated admissions of liability, Defendant did not stipulate to any admission or inference that its actions were willful. Moreover, it did not stipulate to any admission or inference that this matter constituted an "exceptional case" pursuant to 15 U.S.C. § 1117(a). *Id.* at p. 5, ¶ 3(N).

20. Plaintiff stipulated that it was not seeking recovery of actual damages. *Id.* at p. 5, ¶ 3(O).

21. Additionally, Defendant does not dispute the applicability of injunctive relief and agreed to forfeit and transfer the Domain to Plaintiff. *Id.* at p. 7, ¶ 5(B)(ii)-(iii).

22. The evidence at trial showed Defendant's gross online sales for the relevant time period, were $7,308.03. [Doc. No. 68, at 93:20-94:15], *See also* Def.'s Ex. 10.

23. Although Mr. Casell testified that he did not purchase the Domain for the purpose of redirecting potential customers from Plaintiff's website to Defendant's website, but rather to avoid continuously paying Google AdWords to prioritize Defendant's website when particular words were searched, other testimony conflicted. [Doc. No. 68, at p. 73:16-75:3, 77:24-78:19, 102:10-103:1]. Rather, the evidence at trial showed that Defendant purchased the Domain because it was nearly identical to Plaintiff's name and was using it with the hopes that it would redirect customers to its primary website. *Id.* at p. 75:24-76:8, 76:20-22. Defendant also attempted to acquire a domain mimicking the name of another competitor, Russell Marine Products, but was unsuccessful. *Id.* at p. 86:2-17.

24. Although Plaintiff testified that Defendant attempted to hide the Domain by including the robots.txt file set to "no index" in the Domain's source code, which prevented the Domain from appearing in search engine results, Defendant's evidence is more credible on this point. *Id.* at p. 39:24-43:1, 98:3-99:7, 122:2-24, *See also* Plf.'s Ex. 12. Indeed, the evidence at trial showed that Defendant did not attempt to hide or conceal its use of the Domain. [Doc. No. 68, at p. 82:21-24, 98:3-99:7].

25. Defendant did not attempt to sell the Domain to Plaintiff or a third party, and stipulated that it will transfer the Domian to Plaintiff. [Doc. No. 58, at p. 4, ¶ 3(G); p. 7, ¶ 5(B)(iii)].

26. The evidence at trial showed that Plaintiff is not aware of any specific instances where it lost business because of Defendant's use of the Domain. [Doc. No. 68, at p. 57:18-20].

## CONCLUSIONS OF LAW

### I. The Monetary Remedy for Defendant's Trademark Violation Pursuant to 15 U.S.C. § 1117(a).

"The Lanham Act explicitly prescribes the range of monetary remedies available to a plaintiff who has successfully proven a trademark violation." *W. Diversified Serv., Inc. v. Hyundai Motor America, Inc.*, 427 F.3d 1269, 1272 (10th Cir. 2005). The governing statutory provision, 15 U.S.C. § 1117(a), provides in relevant part that:

> [w]hen a violation of any right of the registrant of a mark...shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, ... subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. . . . If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum . . . shall constitute compensation and not a penalty.

15 U.S.C. § 1117(a).

The parties stipulated that Plaintiff is entitled to the profits from Defendant's online sales for the relevant time period. The parties agree that Defendant's online sales for the relevant time period totaled $7,308.03. However, Defendant argues that Plaintiff is not entitled to §7,308.03, because that is its gross online sales and does not include its costs or deductions.

Defendant has the burden to prove "all elements of cost or deduction claimed." *Klein-Becker USA, LLC v. Englert*, 711 F.3d 1153, 1163 (10th Cir. 2013) (quoting 15 U.S.C. § 1117(a)). Defendant failed to carry its burden to prove any cost or deductions to its online sales for the relevant time period. Although Mr. Casell testified that Defendant's profit margins are generally twenty percent for online sales, Defendant failed to provide any records evidencing its cost or deductions for the sales at issue. Thus, Mr. Casell's testimony regarding Defendant's general profit margin is "a mere estimate and therefore unreliable." *Vitamins Online, Inc. v. Heartwise, Inc.*, No. 2:13-cv-982-DAK, 2020 WL 6581050, at * 22 (D. Utah Nov. 10, 2020); *see also Klein-Becker USA, LLC*, 711 F.3d at 1163.

Accordingly, the Court finds that Plaintiff is entitled to $7,308.03, which constitutes the disgorgement of Defendant's profits from its online sales for the relevant time period.

Plaintiff also asserts that enhanced damages pursuant to 15 U.S.C. § 1117(a) are warranted. Section 1117(a) provides, in relevant part, that "[i]f the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum . . . shall constitute compensation and not a penalty." 15 U.S.C. § 1117(a).

Plaintiff asserts that recovering $7,308.03 under § 1117(a) is inadequate to fully compensate it and to deter Defendant's willful conduct. Plaintiff argues that an increase is warranted, because its harm could not be fully ascertained as Defendant failed to track the sales that originated from its use of the Domain. Although the evidence showed that Defendant cannot with certainty identify which of its online sales during the relevant time period originated from the Domain, the Court finds it inconsequential for its determination because Plaintiff is to receive all of Defendant's gross online sales for the relevant time period, i.e. $7,308.03. Thus, an award in an amount greater than $7,308.03 would constitute a penalty, which is prohibited by 15 U.S.C. § 1117(a). Moreover, Plaintiff admitted that it is not aware of any specific instances where it lost sales because of Defendant's use of the Domain. Therefore, an award of $7,308.03 is appropriate. Accordingly, the Court finds that enhanced damages under 15 U.S.C. § 1117(a) is not warranted.

## II.     The Statutory Relief Awarded for Defendant's Violation of 15 U.S.C. § 1125(d) Pursuant to 15 U.S.C. § 1117(d).

Defendant stipulated that it was liable to Plaintiff for its violation of 15 U.S.C. § 1125(d), but contests the amount of damages to be awarded. Plaintiff has elected "to recover, instead of actual damages and profits, an award of statutory damages in an amount of not less than $1,000 and not more than $100,000 per domain name, as the court considers just" as its remedy for Defendant's violation of 15 U.S.C. § 1125(d). 15 U.S.C. § 1117(d).

"When a plaintiff seeks statutory damages, the court has wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima." *CrossFit, Inc. v. Jenkins*, 69 F. Supp. 3d 1088, 1101 (D.

8

Colo. 2014) (quotation and citation omitted). "To determine a reasonable amount of statutory damages, 'courts generally consider a number of factors . . ., including the egregiousness or willfulness of the defendant's cybersquatting, the defendant's use of false contact information to conceal its infringing activities, the defendant's status as a serial cybersquatter . . . and other behavior by the defendant evidencing an attitude of contempt towards the court of the proceedings.'" *Id.* (quoting *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1086 (C.D. Cal. 2012)). The purpose for the "statutory damages provision is not merely to compensate a plaintiff for its injury, but also to discourage wrongful conduct by the defendant." *Id.* (citing *St. Luke's Cataract and Laser Institute, P.A. v. Sanderson*, 573 F.3d 1186, 1206 (11th Cir. 2009)).

Of the factors, "'the defendant's intent and behavior are the foremost consideration'" in determining the statutory damages. *Id.* (quoting *Original Appalachian Artworks, Inc. v. J.F. Reichert, Inc.*, 658 F. Supp. 458, 465 (E.D. Pa. 1987)). A finding of willfulness "typically requires an intent to appropriate the goodwill of another's mark." *W. Diversified Servs., Inc.*, 427 F.3d at 1270. "[I]ntent . . . requires something more than 'indifference' or a 'mere connection.'" *Id.* at 1274. Rather, intent requires "a conscious desire." *Id.* "'The quintessential example of bad faith intent to profit is when a defendant purchases a domain name very similar to the trademark and then offers to sell the name to the trademark owner at an extortionate price.'" *CrossFit, Inc.*, 69 F. Supp. 3d at 1103 (quoting *Utah Lighthouse Ministry v. Found. for Apologetic Info. & Research*, 527 F.3d 1045, 1058 (10th Cir. 2008)).

9

Here, Plaintiff requests the Court award it $100,000.00 for Defendant's cybersquatting, and Defendant argues that the Court should award an amount closer to $1,000.00. In considering the nature and seriousness of Defendant's cybersquatting the evidence at trial showed that Defendant knew Plaintiff was its direct competitor prior to obtaining the Domain, and also tried to purchase another domain similar to a different competitor's name. Additionally, the evidence showed that Defendant obtained the Domain with the hopes that it would increase and redirect potential customers to its primary website rather than Plaintiff's website. Thus, Defendant's cybersquatting was willful as it intended to appropriate the goodwill of Plaintiff's mark.

However, on the other hand, the evidence at trial showed that Plaintiff has no evidence that it provided statutory notice that its mark was registered in compliance with 15 U.S.C. § 1111 prior to filing this lawsuit. Further, the homepage hosted at the Domain was a replica of Defendant's homepage and did not contain any trademark infringing material, and Defendant stopped using the Domain within a relatively short period of time upon receipt of Plaintiff's cease and desist letter. Additionally, the evidence at trial showed that Defendant did not attempt to sell the Domain to Plaintiff. Rather, Defendant has agreed to transfer the Domain to Plaintiff. Finally, Defendant did not contest liability.

Accordingly, in fully weighing and considering the evidence and circumstances, including the importance of not only compensating Plaintiff, but also discouraging wrongful conduct, the Court finds that Plaintiff is entitled to an award of $40,000.00 pursuant to 15 U.S.C. § 1117(d).

### III.     A Permanent Injunction and Defendant's Transfer of the Domain to Plaintiff.

Plaintiff requests the Court enter a permanent injunction pursuant to 15 U.S.C. § 1116(a), "enjoining Defendant, its officers, agents, servants, employees, successors and assigns, and all persons acting in concert with [Defendant], from using Plaintiff's THE BASS TANK mark or any confusingly similar variations, including the domain name basstank.com, and from engaging in any other conduct likely to cause confusion as to affiliation, connection, or sponsorship between Defendant and Plaintiff." [Doc. No. 72, at p. 12, ¶ 24]. Defendant does not take issue with Plaintiff's request for a permanent injunction.

Accordingly, the Court will issue a permanent injunction enjoining Defendant, its officers, agents, servants, employees, successors and assigns, and all persons acting in concert with Defendant, from using Plaintiff's THE BASS TANK mark or any confusingly similar variations, including the Domain, and from engaging in any other conduct likely to cause confusion as to affiliation, connection, or sponsorship between Defendant and Plaintiff.

Moreover, Plaintiff requests the Court order Defendant to transfer the Domain to Plaintiff pursuant to 15 U.S.C. § 1125(d)(1)(C). Defendant does not contest Plaintiff's request and agrees to transfer the Domain to Plaintiff. [Doc. No. 58, at p. 7, ¶ 5(B)(iii)]. Accordingly, within fourteen days after entry of judgment in this matter, Defendant shall transfer the Domain to Plaintiff.

## IV. <u>Plaintiff's Attorneys' Fees and Costs</u>

Finally, Plaintiff requests attorneys' fees and costs under 15 U.S.C § 1117(a). Section 1117(a) establishes that, when Section 1125(d) has been violated, a plaintiff is entitled to costs and, in exceptional cases, attorneys' fees. 15 U.S.C. § 1117(a).

"The prevailing party has the burden of demonstrating exceptionality by a preponderance of the evidence." *Aftwear, Inc. v. Mast-Jaegermeister US, Inc.*, No. 22-4020, 2023 WL 8232072, at *2 (10th Cir. Nov. 28, 2023) (citing *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 557 (2014)). "District courts have broad discretion to decide whether a case is exceptional under the totality of the circumstances." *Id.* Indeed, "[e]ven when a court deems a case exceptional it has discretion to decide whether the case is sufficiently exceptional to warrant a fee award." *Id.* (citing *Nat'l Ass'n of Pro. Basketball Leagues, Inc. v. Very Minor Leagues, Inc.*, 223 F.3d 1143, 1146 (10th Cir. 2000)).

"There is no 'precise rule or formula for making' exceptional-case determinations." *Id.* (quoting *Octane Fitness, LLC*, 572 U.S. at 554). "'[A]n exceptional case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and facts of the case) or the unreasonable manner in which the case was litigated.'" *Derma Pen, LLC v. 4EverYoung Ltd.*, 999 F.3d 1240, 1245 (10th Cir. 2021) (quoting *Octane Fitness, LLC*, 572 U.S. at 554). In determining whether a case is exceptional courts consider the "totality of the circumstances." *Id.* at 1246 (quoting *Octane Fitness, LLC*, 572 U.S. at 554). Relevant factors to consider "include frivolousness, motivation, objective unreasonableness (both in the factual and legal

components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence" and "lack of foundation, [a party's] bad faith, and unusually vexatious and oppressive litigation practices." *Id.* (quotations and citations omitted).

Here, considering the totality of the circumstances, the Court finds that this is not an exceptional case such that an award of attorneys' fees is warranted. Although Defendant willfully infringed on Plaintiff's mark, the other factors weigh against a finding of exceptionality. Indeed, Defendant stopped using the domain relatively soon after receiving Plaintiff's cease and desist letter. Moreover, Plaintiff is not aware of any specific instances where it lost business because of Defendant's use of the Domain. Further, there is no evidence indicating Defendant engaged in vexatious or oppressive litigation practices, rather, it admitted liability. And, Defendant's defense of this matter was not meritless, as the Court granted in part Defendant's motion for partial summary judgment [Doc. No. 45], and, as reflected in this Order, maximum statutory damages were not awarded to Plaintiff.

Accordingly, in fully weighing and considering the evidence and circumstances, the Court finds Plaintiff is not entitled to attorneys' fees pursuant to 15 U.S.C. § 1117(a).

As to costs, the Lanham Act provides that a successful plaintiff "shall be entitled" to recover "the costs of the action." 15 U.S.C § 1117(a). "The costs of the action" is not defined, but "courts have generally interpreted recoverable costs to be limited to those costs enumerated in 28 U.S.C. § 1920." *BEPS Servs., LLC v. Blue Escape Pools, LLC*, 4:23-CV-975-SDJ, 2025 WL 2713722, at *9 (E.D. Tex. Sept. 23, 2025) (citation omitted).

Accordingly, Plaintiff may submit a bill of costs in accordance with 28 U.S.C. § 1920 within thirty days after entry of judgment in this matter.

## CONCLUSION

For the foregoing reasons, the Court concludes as follows[1]:

1.      Plaintiff is entitled to an award of $7,308.03 for Defendant's trademark violation pursuant to 15 U.S.C. § 1117(a).

2.      Plaintiff is entitled to an award of $40,000.00 in statutory damages for Defendant's violation of 15 U.S.C. § 1125(d) pursuant to 15 U.S.C. § 1117(d).

3.      The Court will enter a permanent injunction enjoining Defendant, its officers, agents, servants, employees, successors and assigns, and all persons acting in concert with Defendant, from using Plaintiff's THE BASS TANK mark or any confusingly similar variations, including the Domain, and from engaging in any other conduct likely to cause confusion as to affiliation, connection, or sponsorship between Defendant and Plaintiff.

4.       The Court orders Defendant to transfer the Domain to Plaintiff within fourteen days after entry of judgment.

5.      Plaintiff is not entitled to attorneys' fees pursuant to 15 U.S.C. § 1117(a).

6.      Plaintiff may submit a bill of costs no later than thirty days after entry of judgment in accordance with 28 U.S.C. § 1920.

---

[1] Although Plaintiff included in the Final Pretrial Report that it was also seeking "monetary damages under Oklahoma law for unfair competition, common law trademark infringement, passing off and violation of the Oklahoma Deceptive Trade Practices Act," Plaintiff did not address these claims at trial or in any of its subsequent filings. *Compare* [Doc. No. 58, at p. 6, ¶ 5(A)(iii)] *with* [Doc. Nos. 68, 70, 72]. Accordingly, the Court construes that Plaintiff has abandoned these claims.

**IT IS SO ORDERED** this 16th day of January, 2026.

TIMOTHY D. DeGIUSTI
Chief United States District Judge

15